No. 26-2132

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

---

COALITION FOR OPEN DEMOCRACY
*Plaintiff-Appellee*

v.

DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State; and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General, *Defendant-Appellants*

---

Appeal from the United States District Court for the District of New Hampshire
Case No. 1:26-cv-00647-JL-TSM

---

# APPELLANTS' EMERGENCY MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

---

JOHN M. FORMELLA
*Attorney General*

ANTHONY J. GALDIERI
*Solicitor General*

MICHAEL P. DEGRANDIS
*Assistant Attorney General*

New Hampshire Department of Justice
1 Granite Place South, Concord, NH 03301
(603) 271-3650

## INTRODUCTION

Pursuant to Article I, Section 4 of the United States Constitution, New Hampshire establishes the manner in which New Hampshire holds elections. U.S. Const. art. I, sec. 4. House Bill 323 ("HB 323") specifies that only government-issued identification can serve as verification of an individual's identity for obtaining a ballot. HB 323, Ch. 20 at 1 (2026 Sess.) ("This bill requires the presentation of a government-issued photographic means of identification to vote.") (Ex. C). It repeals RSA 659:13, II(a)(5) and (b), which previously allowed presentment of public and private school IDs to obtain a ballot. *Id.* HB 323's regulation allowing only government-issued IDs to obtain a ballot is a reasonable, nondiscriminatory condition of voting.

Plaintiff Open Democracy asserts that RSA 659:13, as amended by HB 323, unconstitutionally burdens voters. It also asserts that the Secretary of State exceeded his authority by issuing inaccurate guidance to local election officials. The Secretary interpreted HB 323's repeal to eliminate the use of student IDs to establish a voter's identity. The district court partially granted Plaintiff's Motion for Preliminary Injunction. It held that Open Democracy is unlikely to succeed on the merits of its challenge to HB 323's student ID-repeal, but Open Democracy "is likely to succeed in challenging a related directive from the Secretary of State that

reaches further than the statute itself." Order, ECF No. 63 at 1 (Oct. 2, 2026). Defendants appeal the issuance of the preliminary injunction.

Defendants are likely to succeed on appeal for at least two reasons. First, the district court misinterpreted New Hampshire state law. Second, equitable principles foreclose injunctive relief due to the proximity of the November 2026 general election. Moreover, even if the district court did not err in its interpretation of state law, the *Purcell* principle and laches doctrine bar an injunction at this late stage of the election process.

## BACKGROUND & PROCEDURAL POSTURE

Governor Ayotte signed House Bill 323 ("HB 323") into law on April 3, 2026. Single Suppl. Timeline, ECF No. 45 at ¶ 2 (Sept. 11, 2026) ("Timeline"). HB 323 amended RSA 659:13, removing public and private school student IDs from the list of identification forms that could verify identification when obtaining a ballot. *Id.* After HB 323, only government-issued ID could serve as automatic identity verifications. *See id.* This change went into effect on June 2, 2026. *Id.* ¶ 5. New Hampshire's primary election was held on September 8, 2026. Its statewide general election will be held just 56 days later, November 3, 2026.

On August 11, 2026, Plaintiff Coalition for Open Democracy filed a four-count Complaint and a Motion for Preliminary Injunction. Compl., ECF No. 1; Mot. Prelim. Inj., ECF No. 2. The Complaint alleges that RSA 659:13, as

amended by HB 323, violates the First, Fourteenth, and Twenty-Sixth Amendments to the United States Constitution, and Part I, Article 37 of the New Hampshire Constitution. *Id.* ¶¶ 232-271. Open Democracy asserts facial constitutional challenges, seeking declaratory and injunctive relief, pursuant to 42 U.S.C. §§ 1983 and 1988. *Id.* ¶¶ 2-3. Defendants objected to the Motion. Defs.' Obj. Mot. Prelim. Inj., ECF No. 25 (Aug. 26, 2026).

Pursuant to the district court's order, the parties filed a joint timeline setting forth all pertinent dates, times, and events, and a joint statement of agreed and disputed facts in advance of the August 31, 2026 evidentiary hearing on Plaintiff's Motion. Joint Timeline, ECF No. 32; Joint St. Facts, ECF No. 33. After receiving evidence at the August 31 evidentiary hearing, the district court denied Plaintiff's Motion for the primary elections. Order, ECF No. 43 (Sept. 1, 2026) (Ex. D). The court did not consider the merits of Plaintiff's arguments, deciding on the ground that the "*Purcell* doctrine dictates that the court refrain from interfering in the State's election law on the eve of the election, with absentee voting already underway." *Id.* (citing *Common Cause Rhode Island v. Gorbea*, 970 F.3d 11, 16 (1st Cir. 2020) (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006)).

On September 2, 2026, Open Democracy asked the district court to consider its Motion with respect to the general election on the record as it then-stood. *See* Post-Primary Elec. Proc. Order, ECF No. 44 at 1 (Sept. 4, 2026). The district court

did not accept Plaintiff's proffer to stand on the evidence previously presented, finding that the "evidentiary record in this proceeding is insufficiently developed." *Id.* The court issued an order scheduling a second hearing. *Id.* As directed by that order, the parties filed a supplemental joint timeline setting forth all pertinent dates, times, and events (ECF No. 45), and a supplemental joint statement of agreed and disputed facts (ECF No. 46).

On September 15 and 16, the district court held a second evidentiary hearing, receiving additional evidence and argument. At 9:23 p.m. on Friday, October 2, 2026, the court issued an order partially granting preliminary relief. ECF No. 63. The court did not enjoin the operation of HB 323's repeal of public and private school IDs as forms of *per se* identity verification. *Id.* at 1 ("[The district court] does not find a likelihood, at this preliminary stage, that New Hampshire's recent amendment to its voter identification statute, RSA 659:13 ('HB 323'), will be proven unconstitutional."). The court held, however, that Plaintiff "is likely to succeed in challenging a related directive from the Secretary of State that reaches further than the statute itself." *Id.*

## STANDARD OF REVIEW

An appellant may move the circuit court for a stay pending appeal of a district court order or final judgment, after the district court has denied the appellant's motion, or as an original matter where "moving first in the district court

would be impracticable." *See* Fed. R. App. P. 8(a). When considering a request for a stay pending appeal, this Court considers four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Gordon-Darby Holdings v. Quinn*, 174 F.4th 255, 258 (1st Cir. 2026) (citing, *inter alia*, *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)). "Within the stay framework, [this Court] review[s] legal conclusions de novo." *Id.*

**ARGUMENT**

Defendants are likely to succeed on the merits of their appeal because the district court incorrectly interpreted how RSA 659:13 and RSA 654:12 operate. Moreover, the district court's decision comes too close in time to the November general election and establishes standards materially different from those applied in the September primary elections. The balance of the equities tip dramatically in favor of a stay, as does the public interest.

On October 5, 2026, Defendants filed a Notice of Appeal (ECF No. 65) in the district court, the same day the district court issued the Preliminary Injunction Order (ECF No. 64). Defendants now seek an immediate stay of the district court's Preliminary Injunction Order (ECF No. 64). Defendants orally requested such a stay at the district court level, prior to the issuance of any adverse order.

The district court did not grant one in either its Order Granting Partial Preliminary Injunctive Relief (ECF No. 63) or its Preliminary Injunction Order (ECF No. 64). Any further request for a stay at the district court level at this late date would be impracticable. *See* Fed. R. App. P. 8(a)(2)(a)(ii). Accordingly, Defendants respectfully request that this Court stay the district court's order, order Plaintiff to file an objection on or before October 8, 2026 at 12:00 p.m., and expedite consideration of this stay request.

## I. This Appeal Will Likely Succeed on the Merits Because the District Court Misinterpreted State Election Law

Even though the New Hampshire legislature removed student IDs as a valid way to prove a person's identity for the purpose of obtaining a ballot on election day, the district court concluded that student IDs could still be used to both obtain a ballot and prove identity when registering to vote under RSA 654:12, I(d)(4) and RSA 659:13, I(c)(1) and (3). The district court therefore found that guidance issued by the New Hampshire Secretary of State's office in April 2026 informing the public that student IDs could not be used to prove identity in these processes was wrong, unconstitutional, and had to be corrected at this late date. The district court concluded that the Secretary had not justified these additional restrictions. The district court therefore preliminarily enjoined the Secretary from enforcing its April 2026 guidance and directed the Secretary to issue revised guidance consistent with its view of New Hampshire law.

The district court's interpretation of New Hampshire law is incorrect. When interpreting state law, a federal court applies "the rules of statutory construction that the state's highest court would follow." *Bourgeois v. TJX Co., Inc.*, 129 F.4th 28, 33 (1st Cir. 2025) (citations and quotation marks omitted). When construing a statute, the New Hampshire Supreme Court "first look[s] to the language of the statute itself, and, if possible, construe[s] that language according to its plain and ordinary meaning." *Appeal of Vasquez*, 175 N.H. 450, 453 (2022). It "interpret[s] the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." *Id.* It "construe[s] all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." *Id.* It "consider[s] words and phrases, not in isolation, but in the context of the statute as a whole in order to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." *Id.*

"All statutes dealing with the same subject matter are to be considered in interpreting any one of them." *In re Liquidation of the Home Ins. Co.*, 166 N.H. 84, 88–89 (2014) (citation and quotation marks omitted). "Where reasonably possible, statutes should be construed as consistent with each other." *Id.* at 89. Accordingly, "[w]hen interpreting two statutes which deal with a similar subject matter," the New Hampshire Supreme Court "will construe them so that they do not contradict

each other, and so that they will lead to reasonable results and effectuate the legislature purpose of the statute." *Id.* "Moreover, in the case of conflicting statutory provisions, the specific statute controls over the more general statute." *Sanborn Reg'l Sch. Dist. v. Budget Comm.*, 150 N.H. 241, 242 (2003) (citation omitted).

It is also "well established" that "an interpretation of a statute by the agency charged with its administration is entitled to deference." *Appeal of Town of Seabrook*, 163 N.H. 635, 644 (2012) (citation omitted). "The deference afforded, however, is not absolute." *Id.* The New Hampshire Supreme Court "will not defer to an agency's interpretation if it clearly conflicts with the express statutory language or if it is plainly incorrect." *Id.* But when a statute is of "doubtful meaning" or "ambiguous," the agency's interpretation is entitled to "substantial deference." *State v. Priceline.com, Inc.*, 172 N.H. 28, 38 (2019) (citations omitted).

Applying these rules of interpretation to RSA 654:12, I(d)(4) and RSA 659:13, I(c)(1) and (3) reveals that the district court's analysis was incorrect. RSA 659:13, I, requires that a voter "present proof of his or her identity meeting the requirements of paragraph II" in order to obtain a ballot. RSA 659:13, I(b). Paragraph II of that statute provides in relevant part:

> Only the following forms of identification bearing a photograph of the voter shall satisfy the identification requirements of paragraph I:
>
> (1) A driver's license issued by any state or the federal government.

> (2) An identification card issued under RSA 260:21, RSA 260:21-a, or RSA 260:21-b or a nondriver's identification card issued by the motor vehicles division, department, agency, or office of any other state.
> (3) A United States armed services identification card.
> (4) A United States passport or passcard.

RSA 659:13, II(a)(1)–(4) (emphasis added). HB 323 specifically removed student IDs from this list. HB 323 at 2:7-8, 16-30. The phrase beginning "[o]nly the following forms of identification" was added during this same legislative session. SB 223-FN, Ch. 243 at 2:8 (2026 Sess.) (replacing "The following forms" with "Only the following forms") (Ex. E).

The word "only" means "as a single fact or instance and nothing more or different" or "solely, exclusively." *Only*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/only (last visited October 5, 2026). Thus, as amended, RSA 659:13, II(a)(1)–(4) provides an exclusive list of those forms of identification that can be used as proof of identification in order to obtain a ballot under RSA 659:13, I. Student IDs are not included on that list. Student IDs are therefore not valid proof of identification under the "plain and ordinary meaning" of the statute. *Appeal of Vasquez*, 175 N.H at 453.

The district court nonetheless concluded that student IDs may still be considered under RSA 659:13, I(c)(1) and (3). RSA 659:13, I(c)(1) provides that "[i]f the voter does not have a valid photo identification, the ballot clerk shall

direct the voter to see the supervisor of the checklist." RSA 659:13, I(c)(1). RSA 659:13, I(c)(3) in turn provides:

> The supervisor of the checklist shall review the voter's qualifications and determine if the voter's identity can be verified. If the supervisor of the checklist determines that the voter's qualifications and identity are established, the voter shall be allowed to vote. If the supervisor of the checklist determines that the voter's qualifications and identity have not been established, the voter shall not be allowed to vote. A voter not allowed to vote as a result of the determination of the supervisor of the checklist may take an immediate appeal to the superior court as provided in RSA 654:12, V.

This language does not, as the district court appeared to assume, authorize the supervisor of a checklist to consider forms of photo identification *not* included in the exclusive list in RSA 659:13, II(a) as proof of identification. And such an interpretation would functionally nullify HB 323. RSA 659:13, I(c)(3) allows a supervisor to "review the voter's qualifications and determine if the voter's identity can be verified." It does not say that a supervisor can review unauthorized forms of ID to deem identity proven and issue a ballot.

RSA 659:13, II(a) contains an express and exclusive list of the forms of photo identification that are valid to obtain a ballot. To conclude that the New Hampshire legislature nonetheless intended to authorize the supervisor of a checklist to consider a form of photo ID expressly removed from that list, and that it did so *sub silento*, is incompatible with how the New Hampshire Supreme Court

interprets statutes. *See Appeal of Vasquez*, 175 N.H. at 453 (admonishing courts to "construe all parts of a statute together to effectuate its overall purpose").

The result would remain the same, however, even if the legislature's intent were somehow ambiguous or in doubt. Under those circumstances, as discussed, an agency's interpretation is entitled to "substantial deference." *Priceline.com, Inc.*, 172 N.H. at 38; *see also Appeal of Town of Seabrook*, 163 N.H. at 644. The Secretary of State's office has offered a consistent interpretation of whether student IDs can be used to obtain a ballot since HB 323's enactment. *See, e.g.*, N.H. Elec. Proc. Man., Sec'y of State at 12 (EPM 2026) (Ex. F). That interpretation does not "clearly confict[] with the express statutory language" and is not "plainly incorrect." *Appeal of Seabrook*, 163 N.H. at 644. It is therefore entitled to deference.

While this does not expressly resolve whether student IDs are valid forms of identification in order to register to vote under RSA 654:12, I(d)(4), it is undisputed at this juncture (and accepted by the district court) that the Secretary of State's office reads RSA 654:12 and RSA 659:13 "in harmony" with one another. ECF Doc. No. 60 ¶ 9; Oct. 2, 2026 Order at 14. This finds support in the New Hampshire Supreme Court's precedent that "[a]ll statutes dealing with the same subject matter are to be considered in interpretating any one of them." *In re Liquidation of the Home Ins. Co.*, 166 N.H. at 88–89. Nor can there be any doubt

that the language in RSA 659:13, II(a), when properly construed, is more specific than the general language in RSA 654:12, I(d). It therefore "controls" to the extent these statutes conflict. *Sanborn Reg'l Sch. Dist.*, 150 N.H. at 242 (2003) (citation omitted).

For all of these reasons, the district court very likely erred when it concluded the Secretary of State's April 2026 guidance was inconsistent with RSA 654:12(d)(4) and RSA 659:13(c)(1) and (3). At best, these state statutory provisions are ambiguous and the Secretary's interpretation is entitled to deference at this late stage in the election process. The Secretary has therefore met his burden under the first stay factor.

## II. New Hampshire Will Suffer Irreparable Harm Absent a Stay for the Reasons Expressed by the *Purcell* Principle and the Doctrine of Laches

Under well-established equitable principles, the State is irreparably harmed by an injunction this close to the November general election. The *Purcell* principle requires judicial restraint to avoid voter and administrator confusion. Additionally, Open Democracy's unjustified delay in seeking preliminary injunctive relief is substantially prejudicial to the State's general election administration.

### A. The *Purcell* Principle Bars an Injunction on the Eve of the November General Election

The district court should not have enjoined the State's identity verification procedures just 32 days before the election. The court denied injunctive relief

prior to the September primaries because the *Purcell* principle required it to do so. *See* ECF No. 43 at 1-2. It erred as a matter of law by issuing the injunction regarding the Secretary's guidance. This will cause voter and administrator confusion. The district court's order announces a new interpretation of state law that state election officials have not been trained to administer. Worse yet, the district court's order raises more questions than it answers. If student IDs cannot be accepted as automatic proof of identity, when and under what circumstances do they become other reasonable proof of identification? The answer to these questions is unknown and the Secretary has no time left to try to figure out nuanced answers and train officials accordingly.

The Supreme Court has warned that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam). It has also consistently held that each state "has a compelling interest in protecting voters from confusion" and "preserving the integrity of its election process." *See, e.g.*, *Burson v. Freeman*, 504 U.S. 191, 199 (1992). That is why Supreme Court decisions have "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v.*

*Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (collecting cases). The *Purcell* principle forecloses the preliminary injunction issued here.

"[E]lections are complex and election calendars are finely calibrated processes, and significant upheaval and voter confusion can result if changes are made late in the process." *Alpha Phi Alpha Fraternity v. Raffensperger*, 587 F. Supp. 3d 1222, 1324 (N.D. Ga. 2022). "[A]t every step, state and local officials must communicate to voters how, when, and where they may cast their ballots through in-person voting on election day, absentee voting, or early voting." *Democratic Nat'l Comm. v. Wis. State Legis.*, 592 U.S. 1039, 1043 (2020) (Kavanaugh, J., concurring). So, courts should be circumspect and exercise judicial restraint when an election is near. *See id.* at 1044.

> That important principle of judicial restraint not only prevents voter confusion but also prevents election administrator confusion—and thereby protects the State's interest in running an orderly, efficient election and in giving citizens (including the losing candidates and their supporters) confidence in the fairness of the election.

*Id.* (collecting cases). "When an election is close at hand, the rules of the road should be clear and settled." *Id.* at 1043.

The *Purcell* principle operates any time a material change to election procedures happens close to an election—voting need not have already begun.

> [T]he *Purcell* principle—reflects a bedrock tenet of election law: When an election is close at hand, the rules of the road must be clear and settled. Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates,

> political parties, and voters, among others. It is one thing for a State on its own to toy with its election laws close to a State's elections. But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election.

*Merrill v. Milligan*, 142 S. Ct. 879, 880-81 (2022) (Kavanaugh, J., concurring). The principle operates as "a sensible refinement of ordinary stay principles for the election context[.]" *Id.* at 881. The State has an "extraordinarily strong interest in avoiding late, judicially imposed changes to its election laws and procedures." *Id.*

Over the last five months, local election officials have been trained on the new identity verification rules. *See* ECF No. 63 at 10-11. The parties have stipulated that "[b]etween August 18 and September 1, 2026, the Secretary of State's Office trained 1,077 local election officials through 14 training sessions across the state." Joint St. ¶ 107. "Each training session educated attendees on how to verify voter identities, including HB 323's amendment repealing student IDs as permissible voter identification verification." *Id.* Among other things, the Secretary's Office updated the Election Procedure Manual, ballot clerk manuals, and the statewide voter registration system, to reflect these changes. ECF No. 63 at 10.

The court's injunction requires the Secretary to update guidance to local election officials "clarifying that, although student identification cards are no longer expressly valid to establish voter identity under RSA 659:13, election officials may consider them, along with other available evidence, when

determining voter identity under RSA 654:12(d)(4) and RSA 659:13(c)(1) and (3)." Prelim. Inj. Order, ECF No. 64 (Oct. 5, 2026). This clarification would be a complete reversal of prior guidance and training. The new guidance would be inconsistent with the Election Procedure Manual, the statutorily required polling place posters, webpages, and other manuals such as the ballot clerk procedure manual. Changing all these materials is impracticable just 28 days from the election, and these are the documents used by election officials for reference on election day, though they will be out-of-date. Notably, "officials" aren't limited to clerks who understand elections—they include ballot clerks and others with whom the Secretary does not have direct contact. There is a substantial risk of inconsistent application of identity verification procedures, if the injunction is not stayed.

Perhaps more importantly, the district court found that the Secretary's Office had been communicating with the public about the change to student IDs since at least April. ECF No. 63 at 10-11. Among other things, the Secretary's Office published student voting guides, updated polling place posters, updated its website, conducted social media outreach, produced and ran radio ads, and spoke at public events, to explain how identity verification will work in ***both*** the primary and general elections. *Id.* at 11-12. Reversing course between the primary and general elections just one month from the general election, creates an unacceptable risk

that the contradiction disincentivizes voting. *See Purcell*, 549 U.S. at 4-5. Moreover, the court's disagreement with the Secretary's interpretation of state law is nuanced. The public could very easily misunderstand current press reports and the Secretary's restatement of the law's application to allow student IDs—standing alone—to verify identity. That is not New Hampshire law and that is not the district court's ruling here. There is substantial risk that voters could show up at the polls with only their student IDs in-hand.

Re-educating local election officials and the public in a short time is practically impossible and risks voter confusion and inconsistent application of law that will likely result in voter disenfranchisement. Defendants are likely to prevail on appeal because the *Purcell* principle's purpose is to avoid such results.

### B. The Doctrine of Laches Forecloses Injunctive Relief this Close to the November Election

The *Purcell* principle governs here, but the doctrine of laches should also foreclose injunctive relief. "[T]he doctrine of laches restricts the assertion of claims or defenses by litigants who have slept upon their rights or prerogatives and, thus, have prejudiced opposing parties by or through their inexcusable delay." *Concord Hosp., Inc. v. N.H. HHS*, 743 F. Supp. 3d 325, 353 (D.N.H. 2024) (quoting *United States v. Letter from Hamilton to De Lafayette (July 21, 1780)*, 15 F.4th 515, 526 (1st Cir. 2021)). Open Democracy cannot reconcile its delay in bringing this lawsuit with its simultaneous demand for preliminary relief.

Laches is "an equitable doctrine which penalizes a litigant for negligent or willful failure to assert [its] rights." *Id.* (quoting *Oriental Fin. Grp., Inc. v. Cooperativa De Ahorro Y Crédito Oriental*, 698 F.3d 9, 20 (1st Cir. 2012)) (alterations in original; quotations and citations omitted). When asserting laches as an equitable defense, a defendant must show: "(1) that the plaintiff's delay in bringing its claim was unreasonable, and (2) that the delay resulted in prejudice to the defendant." *Id.* (citing *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir. 1989)).

Open Democracy initiated this lawsuit and sought preliminary relief ***130 days*** after Governor Ayotte signed HB 323 into law (April 3, 2026), and ***70 days*** after HB 323's effective date (June 2, 2026). In the 130 days between enactment and Open Democracy's Motion, the Secretary of State's Office was actively implementing HB 323. Among other things, the Election Procedure Manual, Department of State's website, social media outreach, radio ads, professionally printed polling place posters, and ballot clerk procedure manuals, have been published and distributed to reflect current New Hampshire election law, including HB 323's changes to identity verification.

While Defendants respectfully disagree with the court's characterization that they contributed in any way "to the difficulty of this case[,]" the difficulty of a case is not the correct legal standard. Open Democracy has not provided ***any***

justification for its delay in seeking equitable relief. Its expedited motion for preliminary relief, which forced Defendants to defend without full investigation to develop a complete factual record, is the type of unreasonable delay that satisfies the first prong of the laches analysis. *See Concord Hosp., Inc.*, 743 F. Supp. 3d at 353. For the reasons discussed above regarding Defendants' substantial efforts to educate the public and local election officials, Open Democracy's delay is substantially prejudicial to Defendants. They defended the Motion while simultaneously administering the September primaries and the November general election. This, and the lack of sufficient time to implement all the changes required to comply with the injunction, are the types of prejudice that satisfy the second prong of the laches analysis.

## III. Plaintiff's Unjustified Delay in Filing this Lawsuit Demonstrates that It Will Not Be Harmed by a Stay of the Injunction

Open Democracy cannot be harmed by a stay for the same reason that the doctrine of laches bars the preliminary injunction. *See infra* Sec. II(B). Open Democracy has not offered any justification for waiting 130 days from HB 323's enactment or 70 days after HB 323's effective date to assert its challenge. Where a plaintiff is aware of election law requirements, but chooses to challenge the law within months of an election, if there is any emergent need for preliminary relief, the "emergency" is one of the plaintiff's own making. *See Respect Me. PAC v. McKee*, 622 F.3d 13, 7-8 (1st Cir. 2010).

Here, Open Democracy chose to wait until the eve of the September primary and November general elections. "Delay or failure to move for a preliminary injunction undermines a showing of irreparable harm at a later juncture." *Tax-Free Fixed Income Fund for P.R. Residents, Inc. v. Ocean Capital LLC*, 137 F.4th 6, 21 (1st Cir. 2025) (citing *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 35 (1st Cir. 2011)). Open Democracy cannot now claim to be harmed by a stay while this appeal is pending.

### IV. The Public Interest Favors a Stay Because Federal Courts Should Not Enjoin Duly Enacted State Election Laws Before Appellate Review, Especially Where an Election Will Be Held in 28 Days

The public interest favors a stay for same reasons that the *Purcell* principle forecloses the preliminary injunction. *See infra* Sec. II(A). "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell*, 549 U.S. at 4-5. The public has an interest in clear and consistent rules regarding voter registration and ballot access less than one month before an election. *See Democratic Nat'l Comm.*, 592 U.S. at 1043 (2020) (Kavanaugh, J., concurring) ("When an election is close at hand, the rules of the road should be clear and settled."). Additionally, the public expresses its interests through the laws its representatives enact. *See Atkin v. Kansas*, 191 U.S. 207, 223 (1903). The public interest is not abstract—it is indivisible from the law.

*See Virginian Ry. Co. v. Sys. Fed.*, 300 U.S. 515, 552 (1937) ("The fact that Congress has indicated its purpose to make negotiation obligatory is in itself a declaration of public interest and policy which should be persuasive in inducing courts to give relief."). Here, the legislature has chosen the commonsense policy that only government-issued IDs will be accepted to obtain a ballot. The Secretary issued guidance consistent with the legislature's policy choice. A stay, therefore, is in the public interest.

Additionally, "the public interest favors orderly administration of the election." *Mi Familia Vota v. Hobbs*, 977 F.3d 948, 954 (9th Cir. 2020); *see also Russell v. Lundergan-Grimes*, 769 F.3d 919, 921 (6th Cir. 2014) ("The public has an interest in the orderly administration of elections to ensure that they are fair, and injecting a significant degree of uncertainty about who is permitted to speak where on Election Day does not coincide with that interest."). This Court at least tacitly recognized as much in a recent order. *See N.H. Youth Movement v. Scanlan*, __ F.4th __, 2026 U.S. App. LEXIS 27399, at *5–6 (1st Cir. Sept. 4, 2026). Here, as discussed, the district court's order injects uncertainty and confusion into the electoral process barely a month before the general election. For this additional reason, a stay of that order is in the public interest.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court stay the district court's injunction until the appellate process has resolved the important questions of law presented here.

Respectfully submitted,

APPELLANTS DAVID M. SCANLAN,
in his official capacity as New Hampshire
Secretary of State and JOHN M.
FORMELLA, in his official capacity as
New Hampshire Attorney General

By their attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date: October 6, 2026

*/s/ Michael P. DeGrandis*

Anthony J. Galdieri, Bar No. 1175480
New Hampshire Solicitor General
Michael P. DeGrandis, Bar No. 1218329
Assistant Attorney General
anthony.j.galdieri@doj.nh.gov
michael.p.degrandis@doj.nh.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Motion for Stay complies with the word limit established by Federal Rule of Appellate Procedure 27(d)(2)(A) and enlarged by the Court, because the motion contains 5,146 words. This Motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared using Microsoft Word for Microsoft 365 MSO (Version 2605 Build 16.0.20026.20166) 64-bit in 14-point Times New Roman typeface.

*<u>/s/ Michael P. DeGrandis</u>*
Michael P. DeGrandis

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2026, I electronically filed the foregoing Motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. Participants in the case are represented by registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Michael P. DeGrandis*
Michael P. DeGrandis

## TABLE OF EXHIBITS

| Exhibit | Record Reference | Description |
|---|---|---|
| **A** | ECF No. 63 | Order Granting Partial Preliminary Injunctive Relief (Oct. 2, 2026) |
| **B** | ECF No. 64 | Preliminary Injunction Order (Oct. 5, 2026) |
| **C** | N/A | HB 323, Ch. 20 (2026 Sess.) |
| **D** | ECF No. 43 | Order Denying Preliminary Injunctive Relief (Sept. 1, 2026) |
| **E** | N/A | SB 223-FN, Ch. 243 (2026 Sess.) |
| **F** | Defs.' Ex. B, Prelim. Inj. Evid. H'rg (Aug. 31, 2026) | N.H. Elec. Proc. Man., Sec'y of State (EPM 2026) |