**No. 26-2132**

In the
**United States Court of Appeals**
**For the First Circuit**

COALITION FOR OPEN DEMOCRACY,

*Plaintiff–Appellee*

v.

DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State; and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General,

*Defendants–Appellants*

Appeal from the United States District Court for the District of New Hampshire
1:26-cv-00647-JL-TSM

# APPELLEE'S RESPONSE TO THE APPELLANTS' RENEWED EMERGENCY MOTION FOR A STAY PENDING APPEAL

Courtney Hostetler
John Bonifaz
Ben Clements
Ben Horton
Free Speech For People
28 South Main Street, Suite 200
Sharon, Massachusetts 02067
(617) 244-0234

Bryan L. Sells
The Law Office of
Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212

*Attorneys for the Appellee*
*Additional Counsel Listed on the Signature Page*

## Corporate Disclosure Statement

Under Rule 26.1 of the Federal Rules of Appellate Procedure, the Coalition for Open Democracy states that it is a nonprofit corporation, that it has no parent corporation, and that no publicly held corporation owns 10 percent or more of its stock.

## Table of Contents

Corporate Disclosure Statement ........................................................ 2

Table of Contents ........................................................................ 3

Table of Citations ........................................................................ 5

Introduction ................................................................................. 8

Background ................................................................................. 9

Argument ................................................................................... 13

I. The State hasn't made a strong showing that it's likely to succeed on appeal. ............................................................ 14

A. The motion doesn't address the grounds for the injunction. .................................................................. 14

B. The exclusion is unjustified whether it comes from the Directive or from the statute. ................................. 15

C. The State's statutory argument is new and contradicts what the State told the district court......... 17

D. The argument is also wrong........................................... 19

E. Deference can't save the Directive................................ 22

F. Even on the State's reading, the injunction stands...... 23

II. The State hasn't shown irreparable harm, and *Purcell* cuts against a stay. ............................................................... 25

A. The district court applied *Purcell* and made findings the State doesn't challenge. ........................................... 26

B. The Secretary has already issued the guidance, so a stay would be the conflicting order............................... 28

C. The State's cases involve courts displacing state law after voting began.......... 31

III. The district court didn't abuse its discretion in rejecting laches.......... 32

IV. The balance of harms and the public interest favor the Coalition.......... 33

Conclusion .......... 35

Certificate of Compliance .......... 38

## Table of Citations

### Cases

*Appeal of Morrissey*,
165 N.H. 87 (2013) .......... 22

*Appeal of Town of Seabrook*,
163 N.H. 635 (2012) .......... 22

*Appeal of Vasquez*,
175 N.H. 450 (2022) .......... 21

*Common Cause Rhode Island v. Gorbea*,
970 F.3d 11 (1st Cir. 2020) .......... 25, 29, 30

*Crawford v. Marion County Election Board*,
553 U.S. 181 (2008) .......... 15

*Dietz v. Town of Tuftonboro*,
171 N.H. 614 (2019) .......... 19

*Does 1-3 v. Mills*,
39 F.4th 20 (1st Cir. 2022) .......... 13

*Does 1-6 v. Mills*,
16 F.4th 20 (1st Cir. 2021) .......... 33

*Doyle v. Huntress, Inc.*,
513 F.3d 331 (1st Cir. 2008) .......... 32

*InterGen N.V. v. Grina*,
344 F.3d 134 (1st Cir. 2003) .......... 24

*Jennings v. Stephens*,
574 U.S. 271 (2015) .......... 24

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) .......... 31

*New Hampshire Youth Movement v. Scanlan*,
No. 26-1750, 2026 WL 2620381 (1st Cir. Sept. 4, 2026) .. 28, 29, 34

*New Jersey v. Trump*,
131 F.4th 27 (1st Cir. 2025) ........................................................ 34

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................ 13, 25

*People Not Politicians v. Onder*,
No. 26A388, 2026 WL 2883222 (U.S. Sept. 25, 2026) .................. 31

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) ........................................................... 25, 29, 31

*R.J. Reynolds Tobacco Co. v. Food and Drug Administration*,
No. 25-40137, 2026 WL 2409778 (5th Cir. Aug. 18, 2026) .......... 34

*Rhode Island v. Trump*,
155 F.4th 35 (1st Cir. 2025) .................................................. 13, 15

*Sanborn Regional School District v. Budget Committee*,
150 N.H. 241 (2003) ....................................................................... 21

*United States v. American Railway Express Co.*,
265 U.S. 425 (1924) ........................................................................ 24

*Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc.*, 645 F.3d 26 (1st Cir. 2011) .................................................. 29

*Washington v. United States Department of Housing and Urban Development*, 171 F.4th 473 (1st Cir. 2026) ............... 13, 18

**Statutes and Session Laws**

2026 N.H. Laws ch. 20 (H.B. 323) ...... 8, 10, 11, 16, 17, 20, 21, 22, 23

2026 N.H. Laws ch. 243 (S.B. 223) .......................................... 10, 20, 22

2026 N.H. Laws ch. 284 (H.B. 317) .......................................... 10, 20, 21

RSA 654:12 .......................................................................... 9, 10, 18, 20, 21

RSA 659:13 .......................................................................... 9, 10, 17, 19, 20

**Other Authorities**

Franklin, N.H., City Charter § C-7,
https://ecode360.com/10175799 ........................................................ 28

N.H. Secretary of State, *Election Day Voting*,
https://www.sos.nh.gov/election-day-voting (last visited Oct.
8, 2026) ...................................................................................... 12, 28

N.H. Secretary of State, *Register to Vote*,
https://www.sos.nh.gov/elections/register-vote (last visited
Oct. 8, 2026) ................................................................................ 12, 28

N.H. Secretary of State, *Secretary of State Requests a Stay of the Court Order on the Use of Student IDs* (Oct. 6, 2026),
https://mm.nh.gov/files/uploads/sos/docs/10-06-26-press-release-hb-323.pdf ........................................................................ 12

**Rules**

Federal Rule of Appellate Procedure 26.1 .......................................... 2

Federal Rule of Appellate Procedure 27 ............................................ 37

Federal Rule of Appellate Procedure 32 ............................................ 37

Federal Rule of Appellate Procedure 8 .............................................. 13

## Introduction

This is an appeal from a narrow preliminary injunction. The district court upheld HB 323, the 2026 law that removed student IDs from the list of expressly valid photo identification for obtaining a ballot in New Hampshire. It enjoined only the April Directive, a Secretary of State press release announcing that student IDs could no longer be used for any purpose, including under the statutory safety valves that let election officials verify a voter's identity by other reasonable evidence. The court found that the Directive went beyond the statute and burdens young voters, and the State had offered no interest to justify it.

The State asks this Court to stay that injunction four weeks before the general election. The district court has denied the same request, and its order explains why: The injunction rests on "the *State's own articulation* of state law throughout this litigation." (Dkt. No. 72 at 2.) The State's statutory argument was raised "for the first time in the motion to stay" and "is inconsistent with the interpretation actually advanced by the State" below. (*Id.* at 2-3

n.15.) And the injunction "removes a barrier; it does not impose any new procedure that officials or voters must learn." (*Id.* at 4.) The State's motion doesn't engage with the grounds for the injunction, its merits argument contradicts what it told the district court, and the equities run the other way. The Secretary already issued revised guidance. The only change to the rules now on the table is the one the State asks this Court to order.

## Background

New Hampshire law separates registering to vote from obtaining a ballot. To register, an applicant must prove identity, and "[a]ny other evidence that reasonably establishes that it is more likely than not that the person is who they claim to be" suffices. RSA 654:12, I(d)(4). To obtain a ballot, a voter presents a "valid photo identification" to a ballot clerk. RSA 659:13, I(b), II(a). A voter who "does not have a valid photo identification" is sent to the supervisor of the checklist, who "shall review the voter's qualifications and determine if the voter's identity can be verified."

RSA 659:13, I(c)(1), (3). Before 2026, students used their student IDs under both statutes. (Dkt. No. 46 ¶¶ 1, 12.)

HB 323, signed April 3, 2026, and effective June 2, removed student IDs from the list of expressly valid photo identification in RSA 659:13, II(a). It didn't amend the registration statute or the safety valve at RSA 659:13. (Dkt. No. 68 at 9.) On April 23, the Secretary announced that "student IDs can no longer be used to register to vote or obtain a ballot on election day" (the "April Directive"). (Dkt. No. 46 ¶ 3.) SB 223, signed July 2, added the word "only" to the introductory clause of RSA 659:13, II(a). (Mot. Ex. E.) HB 317, signed July 10, repealed and reenacted the safety valve in RSA 659:13, I(c), and amended RSA 654:12, I(d)(4), leaving the "any other evidence" standard in place. 2026 N.H. Laws ch. 284.

The Coalition sued on August 11. The district court held an evidentiary hearing on August 31 and denied relief for the September 8 primary under *Purcell*. (Dkt. No. 43.) After two more hearing days and a court-ordered supplement from the State (Dkt. No. 60), the court issued a 50-page opinion on October 2, and an

amended version on October 6 expanding two footnotes. (Dkt. Nos. 63, 68.) It found no likelihood of success on the challenge to HB 323 itself. But it found that the April Directive imposes a burden on young voters the State had never tried to justify and likely violates the First and Fourteenth Amendments under *Anderson* and *Burdick* and, independently, the Twenty-Sixth Amendment. (Dkt. No. 68 at 30-35, 42-43.) On October 5, the court entered an injunction barring enforcement of the Directive and ordering the Secretary to issue revised guidance "as soon as practicable." (Dkt. No. 64.)

The State appealed the same day. It didn't ask the district court for a stay, even though the court had told the parties on October 1 when its ruling would issue and had told the State at argument that it would grant a stay "to let you get to the Circuit" *if it enjoined HB 323*. (Dkt. No. 72 at 1; Dkt. No. 62 at 93:6-20.) Instead, the State "took four days to seek a stay from the Court of Appeals." (Dkt. No. 72 at 1.) This Court denied that motion without prejudice on October 7. The State then moved in the district court,

which denied the motion in a four-page order the same day, "to avoid further passage of time." (*Id.* at 4.)

Meanwhile, the Secretary issued revised guidance. His website now carries a notice on both the election-day page and the registration page that the guidance "has been updated to accurately reflect the court's order as of October 2." It tells voters that if they lack a listed ID, supervisors of the checklist "may consider a student identification card along with other available evidence." N.H. Sec'y of State, *Election Day Voting*, https://www.sos.nh.gov/election-day-voting (last visited Oct. 8, 2026); N.H. Sec'y of State, *Register to Vote*, https://www.sos.nh.gov/elections/register-vote (last visited Oct. 8, 2026). The Secretary also sent revised guidance to clerks and supervisors through the statewide voter registration system on October 5. On October 6, the Secretary posted a press release on the same website claiming that the court's interpretation "defies common sense" and that he would seek a stay. N.H. Sec'y of State, *Secretary of State Requests a Stay of the Court Order on the Use of Student IDs* (Oct. 6, 2026),

https://mm.nh.gov/files/uploads/sos/docs/10-06-26-press-release-hb-323.pdf.

## Argument

To obtain a stay, the State must make a "strong showing" that it's likely to succeed on the merits, will be irreparably injured without a stay, and that the balance of harms and the public interest favor a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009). This Court considers the motion de novo, *Does 1-3 v. Mills*, 39 F.4th 20, 24 (1st Cir. 2022), but the first factor turns on whether the district court abused its discretion in granting the injunction, *Washington v. HUD*, 171 F.4th 473, 488 (1st Cir. 2026), and the district court's findings of fact stand unless clearly erroneous, *Rhode Island v. Trump*, 155 F.4th 35, 44-45 (1st Cir. 2025). This Court won't consider stay arguments that the movant didn't make in the district court, because doing so "undermines" Rule 8. *Id.* at 46-47.

A renewed motion must "state any reasons given by the district court for its action." Fed. R. App. P. 8(a)(2)(A)(ii). The State's motion doesn't. It mentions the district court's order in one

sentence (Mot. 5) and then repeats, nearly word for word, the argument the district court rejected. It says nothing about the court's reasons: that the injunction rests on the State's own articulation of state law, that the statutory argument was new, and that the injunction changes a single line of the Secretary's manual. A motion that doesn't engage with the district court's reasons can't show that they were wrong.

## I. The State hasn't made a strong showing that it's likely to succeed on appeal.

### A. The motion doesn't address the grounds for the injunction.

The district court enjoined the April Directive on two independent federal grounds. It found that the Directive imposes a burden on young voters that is "minimal, but not de minimis," and supported by "direct evidence of at least one actual instance of disenfranchisement," and that the State "articulated no interest specific to" the Directive "at all." (Dkt. No. 68 at 30, 33; *see id.* at 42.) Under *Anderson* and *Burdick*, that was the end of the matter, because a court "is not obligated to construct a justification the State has not offered." (*Id.* at 35.) The court separately held that

the same unjustified, age-targeted exclusion likely violates the Twenty-Sixth Amendment. (*Id.* at 43.) The court said twice that the injunction rests on federal law, not state law. (*Id.* at 34 n.100, 43 n.110.)

The State's motion doesn't engage with these arguments. It doesn't challenge the burden findings, mention the Twenty-Sixth Amendment, and still doesn't identify an interest that the Directive serves. Its only merits argument is that the district court "misinterpreted New Hampshire state law." (Mot. 6-7.) But even if that argument had merit, a movant that leaves an independent ground for the injunction unchallenged hasn't made a strong showing of anything. *See Rhode Island*, 155 F.4th at 47. Because the State's district-court motion was equally silent on the federal grounds (Dkt. No. 70 at 3-7), the State can't raise them for the first time here. *Id.* at 46-47.

### B. The exclusion is unjustified whether it comes from the Directive or from the statute.

The question under *Anderson* and *Burdick* is whether the "precise interests put forward by the State" justify the burden.

*Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 190 (2008) (cleaned up). The district court found that the interests the State offered for HB 323, stale cards and security, were enough to justify removing student IDs from the express list that a ballot clerk must accept. (Dkt. No. 68 at 38-40.) Those interests don't apply to the safety valves. They don't explain why an official who may accept a marriage certificate, another official's attestation, or "any other evidence" may not consider a student ID. The State's own DMV accepts a student ID as proof of identity to issue the voter ID that the State tells students to get instead. (*Id.* at 40 n.105.) And the Deputy Secretary testified that he could see no "factual reason why a student ID could not be reasonable evidence." (Dkt. No. 61 at 173:16-18.) The legislature never declared student IDs to be the one form of evidence a supervisor may not consider. Even if it had, the State would still have to justify that exclusion, and it never has. The injunction stands either way.

### C. The State's statutory argument is new and contradicts what the State told the district court.

In the district court, the State defended the Directive on one ground: that *Pennhurst* barred the court from considering it. (Dkt. No. 25 at 20; Dkt. No. 48 ¶¶ 94-96.) It never argued that the word "only" in RSA 659:13, II(a) forecloses a supervisor from considering a student ID under the safety valve provisions. The district court noted that the Coalition "expressly and repeatedly argued" that the Directive exceeded HB 323, "yet the State chose not to engage with that argument on its merits." (Dkt. No. 68 at 34.)

What the State did say is clear. On September 18, the district court ordered the State to state its position "affirmatively" on whether supervisors of the checklist, when assisting a person who does not have a listed ID, "apply the identity verification provision of RSA 654:12(I)(d)" and "[i]f not, what criteria do supervisors apply?" (Dkt. No. 59.) The State's answer quoted the "only" language and then described a safety valve that reaches well beyond the listed IDs. (Dkt. No. 60.) It gave an example: if a married voter's license shows a different name, "the supervisor

should review the voter's marriage certificate and allow the voter to obtain a ballot." (*Id.* ¶ 6.) A marriage certificate isn't on the list in paragraph II(a). The State conceded that the two statutes "do not materially differ," that its office "has consistently interpreted" them "in harmony," and that the registration statute's "any other evidence" standard "is the same process set forth in RSA 659:13." (*Id.* ¶ 9.)

Now the State says the opposite. It says that paragraph I(c) "does not ... authorize the supervisor of a checklist to consider forms of photo identification not included in the exclusive list." (Mot. 10.) The district court found that this argument was "raised for the first time in the motion to stay" and "is inconsistent with the interpretation actually advanced by the State" when the court "probed this specific question." (Dkt. No. 72 at 2-3 n.15.) The injunction, the court explained, is "not 'announcing a new way of interpreting the relationship between statutory provisions,' but holding the State to the interpretation it supplied." (*Id.* at 2.) A party "cannot" overturn an injunction "based on arguments that it debuts for the first time on appeal." *Washington*, 171 F.4th at 489.

The State's supplement also refutes any suggestion that the ballot-side relief was a surprise. The Coalition's challenge to the Directive focused on registration under RSA 654:12. But the district court asked the State whether the same standard governs the ballot stage, and the State said yes: the two safety valves are "the same process," run by the same officials. (Dkt. No. 60 ¶ 9.) The court adopted that concession, and the State's motion relies on it too. (Dkt. No. 68 at 14; Mot. 11-12.) If the registration safety valve can't exclude student IDs, neither can a ballot-stage safety valve.

**D. The argument is also wrong.**

Start with the text. Paragraph II(a) says that "[o]nly the following forms of identification" satisfy "the identification requirements of paragraph I." RSA 659:13, II(a). It says nothing about paragraph I(c), which exists for the voter who "does not have a valid photo identification." RSA 659:13, I(c)(1). That voter goes to the supervisor of the checklist, who "shall review the voter's qualifications and determine if the voter's identity can be verified." RSA 659:13, I(c)(3). On the State's reading, the supervisor may

consider only listed IDs. But the voter in front of her doesn't have one. That's why she's there. The State's reading leaves paragraph I(c)(3) with nothing to do, and New Hampshire courts "will not construe a statute in a way that would render it a virtual nullity." *Dietz v. Town of Tuftonboro*, 171 N.H. 614, 619 (2019).

The State says that the district court's reading would "functionally nullify HB 323." (Mot. 10.) It has that backward. Before HB 323, a ballot clerk had to accept a student ID. After HB 323, a student with only a student ID goes to the supervisor, who decides case by case whether her identity has been verified. That's a real change, it's the change the legislature made, and the injunction leaves it in place. (Dkt. No. 68 at 48-49.) What the legislature did not do was declare that student IDs were the only form of documentary evidence that election supervisors may not consider.

The legislature's own conduct confirms the point. SB 223 added the word "only" to RSA 659:13, II(a) on July 2, 2026. Eight days later, the legislature repealed and reenacted paragraph I(c) with the same instruction to the supervisor to "determine if the

voter's identity can be verified," and while amending RSA 654:12, I(d)(4) left the "any other evidence" standard intact. 2026 N.H. Laws ch. 284 (H.B. 317). If the legislature had wanted to limit the safety valves to the listed IDs, it knew how. It's the State that asks this Court to add a limitation "that the legislature did not see fit to include." *Appeal of Vasquez*, 175 N.H. 450, 453 (2022).

The registration statute is easier still. The State concedes that its argument "does not expressly resolve" RSA 654:12. (Mot. 11-12.) It falls back on the specific-over-general canon, but that canon applies only to "conflicting statutory provisions," *Sanborn Reg'l Sch. Dist. v. Budget Comm.*, 150 N.H. 241, 242 (2003). The State never identifies a conflict. The statutes govern different events. The parties stipulated that before HB 323, students registered using their student IDs under the catch-all in RSA 654:12, I(d)(4). (Dkt. No. 46 ¶ 12.) HB 323 didn't amend that statute. HB 317 did, and it left the catch-all alone. (Dkt. No. 68 at 9 n.24.)

### E. Deference can't save the Directive.

The State argues that its reading is entitled to "substantial deference." (Mot. 11.) It isn't. The New Hampshire Supreme Court is "the final arbiter of the legislature's intent," it is "not bound by an agency's interpretation of a statute," and deference is unavailable when an interpretation "clearly conflicts with the express statutory language." *Appeal of Morrissey*, 165 N.H. 87, 91-92 (2013) (quoting *Appeal of Town of Seabrook*, 163 N.H. 635, 644 (2012)). The State's does, for the reasons just given.

There's a more basic problem. The Directive issued on April 23, 2026, and it cited HB 323 as its only authority. (Dkt. No. 46 ¶ 3.) SB 223 wasn't signed until July 2. The Directive can't have rested on statutory language that didn't exist. The office's actual rationale was the Deputy Secretary's inference from HB 323's removal of student IDs from one list (Dkt. No. 61 at 172:11-16), which the district court rejected as a "gloss" that, "apart from the Deputy Secretary's testimony, the State has not argued nor articulated." (Dkt. No. 68 at 8 n.19.) The "consistent interpretation" the State cites is a one-paragraph summary in the Election

Procedure Manual stating that HB 323 "eliminates the use of student identification cards for voter registration and obtaining a ballot." (Mot. Ex. F at 12.) That's the Directive restated, not an interpretation. And even if it were the statute's command, the State would still have to justify it, which it has not.

### F. Even on the State's reading, the injunction stands.

Assume that this Court accepts the State's reading and treats the statutes as barring any consideration of student IDs under the safety valves. The constitutional question is the same, and the district court's answer didn't depend on who authored the exclusion. It found that the State "has offered no explanation—legislative, administrative, or otherwise—for why the interests that justify tightening ballot-issuance documentation under RSA 659:13 should justify excluding student identification from RSA 654:12's safety valve provision." (Dkt. No. 68 at 34-35.) If the statute commands that exclusion, the exclusion is unconstitutional under *Anderson* and *Burdick* for the reasons the district court gave.

The State may claim the legislature could prefer a categorical rule to case-by-case judgment, as the district court recognized in upholding HB 323. (Dkt. No. 68 at 38 n.96.) But that reasoning concerns only the ballot clerk's table. The safety valve is case-by-case by design for every document a voter brings. Excluding one document doesn't eliminate ad hoc judgment. It removes one input and leaves the judgment. That is an exclusion the State has never defended. And the State conceded below that no voter has ever used a student ID fraudulently. (Dkt. No. 61 at 47:7-14, 169:22-170:7; Dkt. No. 62 at 87:10-13.)

Nor does the State's reading change the *Purcell* analysis. *Purcell* turns on what the injunction changes in practice, which is nothing that voters or officials must learn. (Dkt. No. 72 at 4.) It doesn't turn on the label the State now attaches to its Directive.

This Court may rely on this ground whether or not the district court reached it. An appellee may urge "any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court," so long as it doesn't enlarge its rights under the judgment. *Jennings v. Stephens*, 574

U.S. 271, 276 (2015) (quoting *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924)); *see InterGen N.V. v. Grina*, 344 F.3d 134, 141 (1st Cir. 2003). The relief is identical under either theory: the Secretary may not instruct election officials to reject student IDs automatically under the safety valves. The State's likelihood of success is low on either path. Under the first, it is bound by its own representations and forfeits its new theory. Under the second, it has never offered a justification for the exclusion, and no reading of the statute supplies one.

## II. The State hasn't shown irreparable harm, and *Purcell* cuts against a stay.

The State bears the burden of showing that it will be irreparably injured without a stay, and "simply showing some possibility of irreparable injury" isn't enough. *Nken*, 556 U.S. at 434-35. *Purcell* itself requires this Court "to give deference to the discretion of the District Court" on such questions. *Common Cause R.I. v. Gorbea*, 970 F.3d 11, 15-16 (1st Cir. 2020) (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006)).

### A. The district court applied *Purcell* and made findings the State doesn't challenge.

The district court didn't ignore *Purcell*. It applied *Purcell* to deny relief for the September primary, where absentee voting was "already in progress." (Dkt. No. 43 at 11-13.) It then explained why the general election "may be on different footing" (*id.* at 14), and later made findings on a fuller record. (Dkt. No. 68 at 45-47.)

Those findings answer the State's motion. General-election voting "has not yet meaningfully begun." (*Id.* at 45-46.) The injunction "leaves ballot design, printing, and shipping untouched." It "requires only updated guidance," and the Secretary "has both shown and testified that it can issue guidance quickly." (Dkt. No. 68 at 47.) Most important, the court found that the injunction "will not negatively impact any qualified voter's right to cast their ballot." Voters with a listed ID are unaffected. Voters without one "may again offer a student ID under the safety valve." And voters who never hear of the injunction "are in the same posture as they would be without" it. (Dkt. No. 68 at 46.)

The district court's stay order adds two more. The Secretary's own Election Procedure Manual already tells supervisors that "[a]ny other evidence" may prove identity, with one exception: "a student identification card cannot be used to prove identity." (Mot. Ex. F at 17.) So the injunction amounts to "ordering the Secretary of State to remove the single line" and "creates no greater risk of 'inconsistent application of identity verification procedures' than already exists under the Secretary of State's guidance, which expressly recognizes and authorizes independent judgment by local polling station supervisors." (Dkt. No. 72 at 3.) And "the injunction removes a barrier; it does not impose any new procedure that officials or voters must learn." (*Id.* at 4.)

The State doesn't argue that any of these findings is clearly erroneous. It repeats assertions the district court rejected. It says that re-educating officials is "practically impossible," that the injunction is "a complete reversal of prior guidance and training," and that the revised guidance "would be inconsistent with the Election Procedure Manual." (Mot. 16-17.) The district court found the opposite: the injunction "is in all other ways consistent with the

Election Procedure Manual." (Dkt. No. 72 at 3.) And the 1,077 State-trained officials were trained to verify identity, including under the safety valve. (Dkt. No. 46 ¶ 107.) The injunction changes one input. The State asks when a student ID "become[s] other reasonable proof of identification." (Mot. 13.) It answered that question itself, for marriage certificates, in its supplement. (Dkt. No. 60 ¶ 6.) The statute requires supervisors to make that determination for every voter who arrives without a listed ID. That's not a new rule. It's the one the legislature wrote.

**B. The Secretary has already issued the guidance, so a stay would be the conflicting order.**

Whatever force the State's confusion argument had on October 5, it has none now. The Secretary has issued revised guidance. His website tells voters, "pursuant to court order," that supervisors "may consider a student identification card along with other available evidence," and voters can register under it today. *Election Day Voting*, *supra*; *Register to Vote*, *supra*. The guidance was in place for Franklin's October 6 municipal election. *See* Franklin, N.H., City Charter § C-7, https://ecode360.com/10175799.

The State did in four days what its motion says is "practically impossible" in four weeks. The motion doesn't mention it.

That matters in two ways. First, it undermines the State's claim of irreparable harm. When the State complied with Chief Judge Elliott's order in *New Hampshire Youth Movement* and "immediately reinstated" the affected procedures, this Court held that the State's own conduct "undermine[d]" its claim of harm. *N.H. Youth Movement v. Scanlan*, No. 26-1750, 2026 WL 2620381, at *1 (1st Cir. Sept. 4, 2026) (citing *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 36 (1st Cir. 2011)). So does the State's own delay. It spent four days on a motion this Court couldn't hear. (Dkt. No. 72 at 1.) This Court faulted the State in *New Hampshire Youth Movement* for having "moved without urgency," and it noted that "[a]n unreasonable delay alone may be sufficient grounds to deny a stay." 2026 WL 2620381, at *1.

Second, it flips the *Purcell* analysis. Voters consult the Secretary's website. A stay would require him to take the guidance down and announce that student IDs may not be considered after all, the second reversal in a week. In *New Hampshire Youth*

*Movement*, this Court denied a stay precisely because voters "who have read and relied upon the Secretary of State's representation may arrive to register and vote on election day without the newly required documentation and be turned away without recourse." *Id.* at *2. The same is true here. *See also Gorbea*, 970 F.3d at 16-17 (treating instructions posted on the state's website as the status quo on which voters rely). Rhode Island supported the change in *Gorbea*, and New Hampshire doesn't support this one, but the public-facing status quo is the same. It's the State's motion, not the injunction, that asks for a change in the rules four weeks before the election.

The State says the public "could very easily misunderstand" the guidance and show up "with only their student IDs in-hand." (Mot. 17.) The Secretary's guidance says "along with other available evidence," and the injunction says student IDs "are no longer expressly valid." (Dkt. No. 64.) If there's a document on the Secretary's website that invites misunderstanding, it's the October 6 press release, which tells voters on the same site that the court's order "defies common sense" and that a stay is coming. The press

release also says that under the order a person could register with a student ID "but not be allowed to obtain a ballot." That's wrong. The injunction covers both safety valves, as the press release itself acknowledges two paragraphs later. And the district court identified where the real confusion lies: "for months, the State's guidance has steered voters toward a voucher-based voter ID program that the record suggests is simply not operational." (Dkt. No. 72 at 4.) "The real risk of voter confusion is created by leaving this guidance untouched." (*Id.*)

### C. The State's cases involve courts displacing state law after voting began.

Every *Purcell* decision the State cites, and every one it could cite, involves a federal court setting aside a rule that the legislature or state law had chosen, usually after voting had started. *See People Not Politicians v. Onder*, No. 26A388, 2026 WL 2883222, at *2 (U.S. Sept. 25, 2026) (per curiam) (*Purcell* applied "with even greater force" where ballots "have been printed and mailed" and reverting was "practically impossible"); *Merrill v. Milligan*, 142 S. Ct. 879, 880-81 (2022) (Kavanaugh, J., concurring).

This case is the opposite on both counts. Ballots are untouched. No law is enjoined. The injunction enforces the legislature's choices against an executive press release that went further. *Purcell* protects the State's election laws from late judicial change. It doesn't protect an agency's gloss on those laws from a ruling that the gloss lacks any justification.

## III. The district court didn't abuse its discretion in rejecting laches.

This Court reviews a district court's application of laches for an abuse of discretion, because laches is "within the 'sound discretion' of the district court." *Doyle v. Huntress, Inc.*, 513 F.3d 331, 336-37 (1st Cir. 2008). The State must show both unreasonable delay and resulting prejudice. (Mot. 18.)

The district court addressed both. It acknowledged the Coalition's delay and held the Coalition to it by denying relief for the primary. (Dkt. No. 43 at 13; Dkt. No. 68 at 47.) But it found that "[b]oth parties ... have since contributed to the difficulty of this case," and that it would not "tip the equities toward defendants based on a delay whose consequences both sides share." (Dkt. No.

68 at 47-49.) On prejudice, it found the burden of compliance "modest and surmountable." (*Id.* at 47.)

The State says that "the difficulty of a case is not the correct legal standard." (Mot. 19.) But prejudice is half of the inquiry, and the only prejudice the State identifies is a burden the court found surmountable and the Secretary has since surmounted. And the State's claim that it was "forced to reactively defend without the benefit of a full investigation" (Mot. 19) doesn't square with three days of evidentiary hearings, a court-ordered opportunity to state its position in writing, and a motion that identifies no evidence it would have offered. A delay measured in weeks isn't the "inexcusable delay" that laches requires. (Mot. 18.)

## IV. The balance of harms and the public interest favor the Coalition.

The last two factors merge when the government is the opposing party. *Does 1-6 v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021). The State's argument that the Coalition "cannot be harmed by a stay" rests entirely on laches (Mot. 19-20), and it fails for the reasons just given. The district court found that the Directive, as

implemented, "demonstrably disenfranchised a voter who testified before the court." (Dkt. No. 68 at 38.) A restriction on the right to vote is an irreparable harm, and "[o]nce the election occurs, there can be no do-over." (*Id.* at 44-45 (cleaned up).) A stay would withdraw guidance already in voters' hands.

The State's public-interest argument assumes that a "duly enacted" law has been enjoined. (Mot. 20.) None has. The State says that "the legislature has chosen the commonsense policy that only government-issued IDs will be accepted to obtain a ballot." (Mot. 21.) But the legislature chose no such thing. It kept a safety valve for voters without a listed ID, reenacted it in July, and left the registration catch-all untouched. The Secretary's Directive, not the injunction, departed from the legislature's choice, and the State has "no legitimate interest" in enforcing an unconstitutional rule. *New Jersey v. Trump*, 131 F.4th 27, 34 (1st Cir. 2025). "The public is not served by a court enforcing a rule that may exceed an agency's statutory authority." *R.J. Reynolds Tobacco Co. v. FDA*, No. 25-40137, 2026 WL 2409778, at *10 (5th Cir. Aug. 18, 2026) (quoted at Dkt. No. 68 at 43). Five weeks ago, this Court found that

"the public interest weighs against granting a stay" where voters had relied on the Secretary's own representations. *N.H. Youth Movement*, 2026 WL 2620381, at *2. That's this case. The public interest lies in letting eligible voters with proof of identity cast a ballot on November 3, without a second reversal in the final weeks.

## Conclusion

The injunction enforces the statutes as the State itself described them, against a Directive that the State has never justified. The Secretary has already issued revised guidance. A stay therefore wouldn't preserve the status quo. It would change the rules for the second time in a month, four weeks before the election, in the direction that keeps eligible voters from proving who they are. The Court should deny the motion.

Dated: October 9, 2026

***/s/ Bryan L. Sells***
Bryan L. Sells
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

Courtney Hostetler
John Bonifaz
Ben Clements
Ben Horton
Free Speech For People
28 South Main Street, Suite 200
Sharon, Massachusetts 02067
(617) 244-0234
chostetler@freespeechforpeople.org
jbonifaz@freespeechforpeople.org
bclements@freespeechforpeople.org
bhorton@freespeechforpeople.org

Henry C. Quillen
Whatley Kallas, LLP
159 Middle Street, Suite 2C
Portsmouth, New Hampshire 03801
(603) 294-1591
hquillen@whatleykallas.com

Michael S. Gardener
Courtney P. Herndon
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
msgardener@mintz.com
cherndon@mintz.com

*Attorneys for the Appellee*

## Certificate of Compliance

This response complies with the type-volume limitation of Rule 27(d)(2)(B) of the Federal Rules of Appellate Procedure because, excluding the parts of the document exempted by Rule 32(f), it contains 5,198 words. This response also complies with the typeface and type-style requirements of Rule 27(d)(1)(E) and Rule 32(a)(5) and (6) because it has been prepared using Microsoft Word in the 14-point Century Schoolbook typeface in Roman style.

***/s/ Bryan L. Sells***

Bryan L. Sells
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com