No. 26-2132

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

COALITION FOR OPEN DEMOCRACY,

*Plaintiff-Appellee*,

v.

DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State; and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General

*Defendants-Appellants*.

On Appeal from the United States District Court for the District of New Hampshire, No. 1:24-cv-00647-JL-TSM

# ***AMICUS CURIAE*** BRIEF OF REPUBLICAN NATIONAL COMMITTEE SUPPORTING STAY

Thomas R. McCarthy
Gilbert C. Dickey
Conor D. Woodfin
Peter Allevato
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 2209
(703) 243-9423
tom@consovoymccarthy.com

October 10, 2026

*Counsel for Amicus*

# TABLE OF CONTENTS

Table of Authorities ........ ii

Rule 26.1 Corporate Disclosure Statement ........ iv

Interest of Amicus Curiae ........ 1

Argument ........ 2

I. *Purcell* precludes enjoining state voter-ID laws so close to an election. ........ 2

A. Enjoining voter verification rules would disrupt the upcoming election and confuse voters. ........ 3

II. The Coalition unduly delayed. ........ 6

Conclusion ........ 8

Certificate of Compliance ........ 9

Certificate of Service ........ 9

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. League of United Latin Am. Citizens*,
146 S. Ct. 418 (2025) ..... 5

*Allen v. Milligan*,
608 U.S. 511 (2026) ..... 5

*Ams. for Citizen Voting Pac v. Wolfe*,
2026 WL 1329715 (E.D. Wis. May 12) ..... 6

*Benisek v. Lamone*,
585 U.S. 155 (2018) ..... 9, 10

*Carpenter v. Landry*,
2026 WL 2473631 (M.D. La. Aug. 4, 2026) ..... 6

*Charlesbank Equity Fund II v. Blinds to Go*,
370 F.3d 151 (1st Cir. 2004) ..... 9, 11

*Coal. for Open Democracy v. Scanlan*,
2026 WL 2583044 (D.N.H. Sept. 1) ..... 7, 10

*Coll. Democrats of N.C. v. N.C. State Bd. of Elections*,
2026 WL 327927 (M.D.N.C. Feb. 8) ..... 6

*Colo. Republican Party v. Griswold*,
2026 WL 1145559 (D. Colo. Apr. 28) ..... 6

*Colon-Marrero v. Conty-Perez*,
703 F.3d 134 (1st Cir. 2012) ..... 3

*Common Cause R.I. v. Gorbea*,
970 F.3d 11 (1st Cir. 2020) ..... 2

*Count US IN v. Morales*,
172 F.4th 974 (7th Cir. 2026) ..... 3, 7

*Crookston v. Johnson*,
841 F.3d 396 (6th Cir. 2016) ..... 10

*Democratic Nat'l Comm. v. Wis. State Legislature*,
141 S. Ct. 28 (2020) ..... 8

*Foster v. Mississippi*,
2026 WL 2352910 (N.D. Miss. Aug. 13, 2026) ..... 6

*Gardner v. Henderson*,
2026 WL 496448 (D. Utah Feb. 23) ..... 6

*Kishore v. Whitmer*,
972 F.3d 745 (6th Cir. 2020) .................... 3

*Malliotakis v. Williams*,
146 S. Ct. 809 (2026) .................... 5

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) .................... 2, 3, 9

*OPAWL v. Yost*,
118 F.4th 770 (6th Cir. 2025) .................... 8

*People Not Politicians v. Onder*,
609 U.S. ___ (2026) .................... 4

*Purcell v. Gonzalez*,
*549 U.S. 1 (2006)* .................... 4

*Red Wine & Blue v. LaRose*,
2026 WL 2922945 (6th Cir. Sep. 23, 2026) .................... 7

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
589 U.S. 423 (2020) .................... 2

*Respect Maine PAC v. McKee*,
622 F.3d 13 (2010) .................... 10, 11

*Reynolds v. Sims*,
377 U.S. 533 (1964) .................... 5

*RNC v. Mi Familia Vota*,
145 S. Ct. 108 (2024) .................... 8

*Shafii v. City of Charleston*,
2026 WL 1244855 (S.D. W. Va. May 6) .................... 6

*Sherman v. Hargett*,
2026 WL 1471870 (M.D. Tenn. May 26) .................... 5

*Tenn. Conf. of the NAACP v. Lee*,
105 F.4th 888 (6th Cir. 2024) .................... 4, 7, 8, 9

**Statutes**

52 U.S.C. §30101 .................... 1

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

The Republican National Committee has no parent corporation nor is it a subsidiary or affiliate of a publicly held entity. No publicly owned entity owns more than 10% or more of its stock.

## INTEREST OF AMICUS CURIAE

The Republican National Committee is a national committee under 52 U.S.C. §30101. It manages the Republican Party's business, coordinates election strategy, and supports Republican candidates nationwide. The RNC coordinates fundraising and election strategy, and develops and promotes the national Republican platform. The RNC's membership consists of the party chair, national committeeman, and committeewoman for each State and territory, including multiple representatives from New Hampshire who are registered New Hampshire voters. The RNC has interests in the rules and procedures governing New Hampshire's elections. These interests are heightened given the upcoming elections for federal and state office.

The RNC has extensive expertise in election law, election administration, and voting rights. And its members, candidates, and voters are among those most affected by lawsuits challenging election rules in New Hampshire and nationwide.

No party's counsel authored this brief in whole or in part, and no party or person contributed any funds to this brief other than Amicus. Counsel for all parties consent to the filing of this brief. Fed. R. App. P. 29(a)(2).

## ARGUMENT

Election day looms less than a month away. "The Supreme Court … has offered a special caution about the perils of federal courts changing the rules on the eve of an election." *Common Cause R.I. v. Gorbea*, 970 F.3d 11, 16 (1st Cir. 2020) (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006)). And the Coalition for Open Democracy unreasonably delayed in its request to enjoin the State. The district court nevertheless issued an injunction that threatens to disrupt identity verification in New Hampshire's elections. Election officials do not have time to course-correct to this uncertain ruling. This Court should stay that injunction during the pendency of this appeal. "[W]hen a lower court intervenes and alters the election rules so close to the election date," an appellate court "should correct that error." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 425 (2020).

### I. *Purcell* precludes enjoining state voter-ID laws so close to an election.

The *Purcell* principle is a "bedrock tenet of election law." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring in grant of stay applications). It instructs that "[w]hen analyzing the balance of equities" in election cases, federal courts "'should ordinarily not alter the election rules on the eve of an election.'" *Kishore v. Whitmer*, 972 F.3d 745, 751 (6th Cir. 2020) (quoting *RNC*, 589 U.S. at 424). To "overcome" *Purcell*, plaintiffs must show "at least" that "the underlying merits are entirely clearcut" in their favor, they "would suffer irreparable harm absent the injunction," they have "not unduly delayed," and "the changes in question are at least feasible before the election

without significant cost, confusion, or hardship." *Milligan*, 142 S. Ct. at 881 (Kavanaugh, J., concurring). The Coalition doesn't meet those stringent requirements.

*Purcell* applies to voter-verification laws of the sort the Coalition challenges here. *Count US IN v. Morales*, 172 F.4th 974, 976 (7th Cir. 2026); *Colon-Marrero v. Conty-Perez*, 703 F.3d 134 (1st Cir. 2012). That's because "[c]ourt orders affecting elections … can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4-5. Indeed, those principles apply with special force to "an injunction suspending the voter identification rules," because "[v]oters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Id.* at 4, 6. So "[t]he concerns that underlie *Purcell*—the risk of voter confusion and the unfairness of unexpected administrative burdens" apply at least as much here as they do to "other types of belated voting changes." *Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 897 (6th Cir. 2024) (per curiam).

**A. Enjoining voter verification rules would disrupt the upcoming election and confuse voters.**

Election season is underway. The Supreme Court already applied the *Purcell* principle two weeks ago, reminding courts yet again that they "'should not 'alter the election rules' of a state 'on the eve of an election.'" *People Not Politicians v. Onder*, slip op. at 3, 609 U.S. ___ (2026) (per curiam). And this summer, the Supreme Court reversed a district court for violating *Purcell* by enjoining "Alabama's ongoing efforts to conduct its imminent 2026 congressional elections under maps that its elected

representatives selected." *Allen v. Milligan*, 608 U.S. 511, 514 (2026). In fact, the Supreme Court applied *Purcell* for this election cycle as far back as December 2025 when a district court "improperly inserted itself into an active primary campaign." *Abbott v. League of United Latin Am. Citizens*, 146 S. Ct. 418, 419 (2025). When "a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief," even if that relief would ordinarily be justified. *Reynolds v. Sims*, 377 U.S. 533, 585 (1964). Already, "candidates, election officials, and voters have relied on the rules in place." *Malliotakis v. Williams*, 146 S. Ct. 809, 811 (2026) (Alito, J., concurring in grant of stay).

For many months now, courts across the country have concluded that *Purcell* "counsels strongly against the issuance of an injunction" this late in the day. *E.g.*, *Sherman v. Hargett*, 2026 WL 1471870, at *7 (M.D. Tenn. May 26); *see also Foster v. Mississippi*, 2026 WL 2352910, at *7-15 (N.D. Miss. Aug. 13, 2026); *Carpenter v. Landry*, 2026 WL 2473631, at *5 (M.D. La. Aug. 4, 2026); *Ams. for Citizen Voting Pac v. Wolfe*, 2026 WL 1329715, at *3 (E.D. Wis. May 12); *Shafii v. City of Charleston*, 2026 WL 1244855, at *5 (S.D. W. Va. May 6); *Colo. Republican Party v. Griswold*, 2026 WL 1145559, at *3 (D. Colo. Apr. 28); *Gardner v. Henderson*, 2026 WL 496448, at *7 (D. Utah Feb. 23) (three-judge court); *Coll. Democrats of N.C. v. N.C. State Bd. of Elections*, 2026 WL 327927, at *3 (M.D.N.C. Feb. 8). In the few recent cases where district courts granted relief, circuit courts quickly stayed those orders because they were "a clear violation of *Purcell*." *E.g.*, *Count US IN v. Morales*, 172 F.4th 974, 975-76 (7th Cir. 2026) (per curiam) (staying

"preliminary injunction prohibiting the application of a statutory provision impacting voter eligibility"); *Red Wine & Blue v. LaRose*, 2026 WL 2922945, at *6-7 (6th Cir. Sep. 23, 2026) (injunction issued "about a month before a looming registration deadline" "appears to run afoul of *Purcell*." (cleaned up)). These cases could not be clearer: election season is here, and *Purcell* applies.

This Court need look no further than the district court's prior order to know that *Purcell* forbids this injunction. In September, the district court held that "the operational window to redistribute guidance, retain poll workers, and re-educate voters before more ballots are cast is close to closing. This is the type of compressed timeline that *Purcell* was designed to guard against." *Coal. for Open Democracy v. Scanlan*, 2026 WL 2583044, at *6 (D.N.H. Sept. 1). The general election is now less than a month away. *Purcell* itself stayed "an injunction issued about a month before an election." *Tenn. Conf. of the NAACP*, 105 F.4th at 897. And in the last federal election cycle, the Supreme Court partially stayed a "district court's May 2, 2024 judgment" affecting voter-registration rules. *RNC v. Mi Familia Vota*, 145 S. Ct. 108 (2024) (mem.).

When an election is close, courts "must address whether the *Purcell* principle applies." *OPAWL v. Yost*, 118 F.4th 770, 774 (6th Cir. 2025). And the risk of confusion is heightened following the primary election, which operated under the very rules that the Court has since enjoined. New Hampshire held its primary elections on September 8, 2026. Forcing the State and voters to follow new rules for the general election that were not applied in the primary election is exactly the sort of "conflicting guidance"

that "could create an 'incentive' for voters to 'remain away from the polls.'" *See Tenn. Conf. of the NAACP*, 105 F.4th at 900 (quoting *Purcell*, 549 U.S. at 5).

Election season was already immanent when the Coalition filed its complaint. New Hampshire has been "in the thick of election season" for months now. *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 28 (2020) (Roberts, C.J., concurring in denial of application to vacate stay) (mem.). The district court remade voter verification policy without enough time remaining to implement the ordered change. That order violates *Purcell.*

## II. The Coalition unduly delayed.

Even if the injunction wouldn't impose "significant cost, confusion, or hardship" on voters and election officials, the Coalition's months-long delay in seeking relief is inexcusable. *Milligan*, 142 S. Ct. at 881 (Kavanaugh, J., concurring). "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018) (per curiam). "The longer the delay, the more pervasive the doubt" that urgent, preliminary relief is warranted. *Charlesbank Equity Fund II v. Blinds to Go*, 370 F.3d 151, 163 (1st Cir. 2004). That the Coalition never provided a "reasonable explanation" for its delay should have been reason enough to deny their motion. *Tenn. Conf. of the NAACP*, 105 F.4th at 898.

The Coalition's delay also bolsters the case for applying *Purcell.* The principle that "courts will generally decline to grant an injunction to alter a State's established election procedures" is "especially true when a plaintiff has unreasonably delayed bringing his

claim." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016). This Court has declined to afford relief to a litigant who, "well aware of the requirements of the election laws, chose not to bring this suit until August 5, … shortly before the November 2 elections … and two months after the primary election." *Respect Maine PAC v. McKee*, 622 F.3d 13, 16 (2010).

Again, the district court's own prior order explains why that principle should have precluded relief here. "The Governor signed HB 323 into law on April 3, 2026, and it took effect on June 2, 2026. The plaintiff waited 130 days after enactment and 70 days after the law took effect before filing suit and simultaneously demanding emergency relief." *Coal. for Open Democracy*, 2026 WL 2583044, at *6. Months passed, and election season began, in the time that the Coalition waited. That is not "reasonable diligence." *Benisek v. Lamone*, 585 U.S. at 159. Yet after the primary elections, the district court did an about-face on its conclusion of unreasonable delay, even though the conclusion of the primaries was a factor *against* injunctive relief in *McKee*. *See* 622 F.3d at 16.

The Coalition's delay is inexcusable. They waited for months, then sought an emergency preliminary injunction rather than litigate the case in a timely fashion from the beginning. The "'emergency' is largely one of their own making." *Id.* The Coalition's "cries of urgency are sharply undercut by" their delay. *Charlesbank Equity Fund II*, 370 F.3d at 163. And any reason to leave the injunction in place during this appeal cannot survive their neglect.

## CONCLUSION

The Court should stay the district court's injunction pending appeal.

Respectfully submitted,

*/s/ Thomas R. McCarthy*

Thomas R. McCarthy
Gilbert C. Dickey
Conor D. Woodfin
Peter Allevato
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 2209
(703) 243-9423
tom@consovoymccarthy.com

October 10, 2026

*Counsel for Amicus*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the word limitations because it contains 1,824 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: October 10, 2026 *Is/ Thomas R. McCarthy*

**CERTIFICATE OF SERVICE**

I filed this brief on the Court's electronic filing system, which will email everyone requiring notice.

Dated: October 10, 2026 *Is/ Thomas R. McCarthy*