No. 26-2132

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

---

COALITION FOR OPEN DEMOCRACY
*Plaintiff-Appellee*

v.

DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State; and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General, *Defendant-Appellants*

---

Appeal from the United States District Court for the District of New Hampshire
Case No. 1:26-cv-00647-JL-TSM

---

# APPELLANTS' REPLY TO APPELLEE'S RESPONSE TO EMERGENCY MOTION TO STAY PENDING APPEAL

---

JOHN M. FORMELLA
*Attorney General*

ANTHONY J. GALDIERI
*Solicitor General*

MICHAEL P. DEGRANDIS
*Assistant Attorney General*

New Hampshire Department of Justice
1 Granite Place South, Concord, NH 03301
(603) 271-3650

## INTRODUCTION

Open Democracy's Response to Defendants' Motion to Stay misses the mark in several ways, but at least three are dispositive. First, the Secretary did not create a restriction separate from the statutory scheme, so Open Democracy's demand for additional justifications for the April guidance is inconsistent with the *Anderson-Burdick* framework. Second, Open Democracy's arguments incorrectly assume that the April guidance imposed additional restrictions and inaccurately attributed argument inconsistencies to Defendants. Third, Open Democracy conflates distributing revised guidance with implementing guidance throughout the election system and it conflates voter confusion with voter misunderstanding under *Purcell*.

## ARGUMENT

### I. The April Guidance Implements the Statutory Scheme—It Does Not Impose Additional Restrictions Requiring *Anderson-Burdick* Analysis Apart from the District Court's Broader HB 323 Analysis

Open Democracy is wrong to argue that Defendants cannot establish a likelihood of success because its understanding of *Anderson-Burdick* is flawed in at least two ways. *See* Resp. at 14. First, Open Democracy asserts that the guidance itself imposes a minimal burden on young voters and assumes heightened scrutiny. *Id.* Rather, it interprets state law consistently within the election scheme. Second, Open Democracy claims that the State did not justify the burden

purportedly imposed. *Id.* This is also incorrect, because the justification for HB 323 applies with equal force to HB 659:13 and HB 654:12.

Under *Anderson-Burdick*, the district court found that the State's interests in preventing wrongful voting, ensuring reliable identity verification, and administering orderly elections, sufficiently justified HB 323's removal of student IDs from the categories of acceptable identification. *See* ECF No. 68 at 31-33. It reached a different conclusion concerning the April guidance because it mistakenly viewed the guidance as imposing a broader restriction that Defendants had not independently justified. *Id.* at 33-35. The court's Twenty-Sixth Amendment analysis followed the same distinction: it found no likelihood of success against HB 323, but found the April guidance likely unconstitutional because it departed from the statute without a separately articulated justification. *Id.* at 41-43. Thus, although the constitutional claims are distinct, both rulings depend on the court's understanding of the relationship between the guidance and the statutory scheme.

An injunction cannot issue here because "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). In determining whether a law is facially invalid, a court may not go beyond the law's

facial requirements—it must not "speculate about 'hypothetical' or 'imaginary' cases." *Id.* at 449-50 (citing *United States v. Raines*, 362 U.S. 17, 22 (1960)).

On its face, RSA 659:13 (as amended), is generally applicable, nondiscriminatory, and does not impose excessively burdensome requirements on any class of voters. As such, it has a plainly legitimate sweep. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 202 (2008) (plurality) (citations omitted). Defendants' Record Supplement explained that HB 323's enumerated categories of identification constrain the verification process in RSA 654:12(d)(4), while supplemental procedures permit election officials to resolve discrepancies and apply expressly authorized alternatives. ECF No. 60 ¶¶ 1-9. On that interpretation, the April guidance implements HB 323's statutory constraint—it does not establish a separate administrative policy that could be construed as having burdened a class of voters different from those impacted by RSA 659:13 or requiring different or additional governmental interests.

Moreover, the State's justifications need only be rationally related to the condition on voting, which they readily do. Where an election restriction is generally applicable and nondiscriminatory, weighing the character and magnitude of voters' burden is an electorate-wide analysis. *Crawford*, 553 U.S. at 205-06 (Scalia, J. concurring) ("[W]e considered the laws and their reasonably foreseeable effect on ***voters generally***.") (citing *Burdick v. Takushi*, 504 U.S. 428, 439 (1992))

(emphasis in original). So, the burden-side of a court's analysis must not include the magnitude of burden experienced by an electoral subset, even if the subset experiences atypically greater difficulties than voters generally. *See id.* (contrasting *Burdick*'s holding and rationale with the *Burdick* dissenters').

Election laws that impose only "reasonable, nondiscriminatory restrictions" are subject to rational basis scrutiny where "'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). "Ordinary and widespread burdens, such as those requiring 'nominal effort' of everyone, are not severe." *Crawford*, 553 U.S. at 205 (Scalia, J. concurring) (citation omitted). "Severe" restrictions are subject to heighten scrutiny where "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)).

A court cannot select a subset of voters who may have greater difficulty complying with requirements, to turn a nominal burden into a severe one. *See id.* Individualized or idiosyncratic "light and heavy burdens are no more than the different ***impacts*** of the single burden that the law uniformly imposes on all voters." *Id.* (emphasis in original). The *Burdick* Court prohibited courts from weighing the burdens of voter-subsets against state interests where generally

applicable election laws are ***facially*** challenged. *See Crawford*, 553 at 206 (Scalia, J., concurring).

The interests Defendants asserted below concerned the use of student IDs as identity-verification credentials, not merely which election official reviewed them at different steps in the election lifecycle. The district court recognized concerns that student IDs may lack expiration dates, remain in circulation beyond their period of reliability, and lack security features associated with government-issued identification. ECF No. 68 at 31-32. Those concerns do not disappear when a supervisor, rather than a ballot clerk, examines the credential. Nor does the existence of individualized verification procedures require that every category of photo identification remain available within them. Supplemental supervisor review can resolve whether an approved credential identifies a voter without reopening the legislature's decision regarding which ID categories are acceptable. The district court recognized that the legislature could adopt a categorical rule rather than leave the reliability of individual student IDs to officials' subjective assessments. *See* ECF No. 68 at 31 n.96. Defendants contend that the statutory scheme preserves supplemental verification without surrendering that categorical policy choice.

The same distinction matters to the Twenty-Sixth Amendment claim. The district court expressly found no evidence that the Secretary acted with animus or

intent to burden students or young voters; it found that he sought to implement HB 323. *Id.* at 39 n.103. That finding does not dispose of the constitutional claim on its own, but it confirms that the guidance's justification must be evaluated in light of the statutory policy it implements. Because the court's contrary understanding led it to separate the guidance from the interests already asserted in support of that policy, Defendants' statutory argument challenges a material premise of the Twenty-Sixth Amendment ruling as well.

## II. As Asserted by Defendants Below, the Alternative Verification Procedures in RSA 654:12, I(d)(4) and RSA 659:13, I(c)(1) and (3) Do Not Permit the Use of Student IDs

### A. Defendants Expressly Argued at the District Court that RSA 659:13, as Amended, Established a Categorical List of IDs that Verify Individuals' Identities

Open Democracy asserts that Defendants' categorical list-argument was raised for the first time on the Motion to Stay, but that is demonstrably false. Pl.'s Resp. at 8. Defendants' pre-injunction Record Supplement is just one of several examples of Defendants' consistent argument throughout this process. "Under New Hampshire law, only government-issued identification may be used to obtain a ballot. RSA 659:13, II(a) ('Only the following forms of identification bearing a photograph of the voter shall satisfy the identification requirements of paragraph I[.]')." ECF No. 60, ¶ 1. Defendants explained that the provisions governing identity verification to register and to vote do not materially differ. *Id.* ¶ 9. The

district court found—as Defendants asserted—that the Secretary "has consistently interpreted RSA 654:12 and RSA 659:13 'in harmony.'" *See* ECF No. 63 at 14 (citing No. 60, ¶ 9).

Defendants contested Open Democracy's assertion that the April guidance was inconsistent with state law at every turn, and respectfully disagree with the district court's conclusions regarding the operation and relationship between RSA 654:12 and RSA 659:13. Indeed, the five-step process articulated in Defendants' Record Supplement provides further support for the Deputy Secretary of State's testimony that RSA 654:12(d)(4) has never been interpreted to set forth different identity-proof standards, nor should it ever be. *See* ECF No. 60, ¶¶ 4-8. The supervisors of the checklist cannot use two different processes when determining whether an ID verifies that a registrant or voter is who the person claims to be. Whether the court correctly interpreted New Hampshire law by applying the state Supreme Court's standards for interpreting state law, is a legal issue is ripe for appellate review. Moreover, with an election just weeks away, the district court's new interpretation warrants appellate review prior to application of the injunction.

### B. Defendants' Marriage-Certificate Example Illustrates Supplemental Verification of a Voter's Identity, Not a Substitution of an Excluded ID for an Approved ID

A government-issued ID does not necessarily establish that the person presenting the ID is the person identified on the ID's face. A ballot clerk may see

a name that does not identically match the voter checklist, for example. The marriage-certificate example does not contradict Defendants' arguments in the district court that student IDs have been categorically precluded as verification of identity. Open Democracy is wrong to claim that the example "says the opposite" of Defendants' Motion to Stay. *See* Pl.'s Resp. (citing Defs.' Mot. Stay at 10). The example is illustrative of a circumstance where a ballot clerk may not accept an otherwise categorically allowed form of ID, so the voter will need additional assistance from the supervisors. ECF No. 60, ¶¶ 2-3. Defendants never argued that marriage certificate becomes verification of identity. Rather, Defendants explained a process where a local election official could initially construe an allowable ID as unacceptable, but additional clarification regarding the ID's facial deficiencies could confirm that the person is who the government-issued ID says the person is.

### C. Defendants' Argument that RSA 654:12 and RSA 659:13 Operate "in Harmony" Is Consistent with Their Position that Student IDs Cannot Be Used to Verify Identity

Open Democracy treats Defendants' Record Supplement as a concession that student IDs remain permissible evidence of identity under both statutes. *See* Resp. at 17-19. This is not so. Defendants' explanation of the operations of, and relationships between, RSA 659:13 and RSA 654:12 begins with the express proposition that "[u]nder New Hampshire law, ***only*** government-issued

identification may be used to obtain a ballot." ECF No. 60, ¶ 1 (emphasis added). In support, Defendants quote the statutory language that includes the restrictive adverb "only," which describes "satisfy[ing] the identification requirements of paragraph I[.]" *Id.* Defendants then identified the ways supervisors may assist voters who do not present acceptable identification, including resolving questions about whether an ID qualifies, obtaining an authorized official attestation, and reviewing supplemental evidence connecting a voter to an otherwise qualifying ID. *Id.* ¶¶ 2-8.

Defendants explained to the district court that the two provisions employ the same identity-verification process. *Id.* ¶¶ 9. Recognizing that officials may consider "other evidence" does not concede that officials may use an excluded ID category to verify identity. As the marriage-certificate example illustrates, supplemental evidence may resolve a discrepancy between a qualifying credential and the person presenting it, without substituting an excluded credential for an approved one. *Id.* ¶ 6. Likewise, recognizing the expressly authorized official-attestation procedure does not concede that supervisors may accept any category of photo identification. *Id.* ¶ 5.

Open Democracy and the district court, therefore, attributed to Defendants a concession they did not make or a failure to raise an argument that they affirmatively advanced in testimony and briefing. *See, e.g.*, ECF No. 72 at 2-3 &

n.15. Defendants acknowledged alternative verification procedures and explained their operation while consistently arguing that RSA 654:12 and RSA 659:13 operate "in harmony."

## III. The Secretary's Immediate Good-Faith Efforts to Comply with the Court's Order Does Not Cure the Irreparable Harms to the State in Compliance, nor Do They Rebalance the Equities Favoring a Stay

In response to Defendants' argument that *Purcell* bars the injunction, Open Democracy asserts that the Secretary's revised guidance—required by the district court—defeats Defendants' showing of irreparable harm and makes a stay, rather than the injunction, the source of a late change in election procedures. *See* Resp. at 28-30. That argument conflates distributing guidance with implementing it throughout the election system and assuring that it is correctly understood and uniformly applied. It also conflates voter confusion with voter misunderstanding rather than disincentivizing voting.

The ability to blast-email revised instructions does not establish that those instructions have displaced prior training and materials, reached all polling personnel, or been consistently understood by officials and voters. The district court's findings describe implementation extending well beyond a single statement in the Election Procedure Manual. The Secretary's Office revised ballot clerk manuals, student voting guides, polling place posters, webpages, and the statewide voter registration system, and communicated the identification requirements

through radio advertisements, social media, public events, and in-person training. ECF No. 68 at 11-12. The court also recognized that the Secretary lacks direct contact with poll workers. ECF No. 68 at 47. Removing one sentence from a manual does not establish that the corresponding instructions have been received or implemented throughout the election network.

The injunction preserves the exclusion of student IDs as valid identification while permitting their consideration alongside other evidence. ECF No. 64. Without training from the Secretary, election officials must understand and apply that nuance ***notwithstanding*** their prior training and reference materials. Voters must likewise understand that ***permission*** to consider a student ID does not ***guarantee*** that it will establish identity. The district court's conclusion that the injunction benefits some voters and leaves others unaffected describes the injunction's intended operation, but that requires the injunction to be understood and correctly applied.

Open Democracy emphasizes that ballot design, printing, and shipping remain unchanged and that voting has not begun. Resp. at 26, 31-32. *Purcell*'s bar is not so limited. It addresses "[c]ourt orders affecting elections" and the confusion they may produce as an election approaches, not merely changes to ballot production. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). A change to the

evidence permitted in that process can affect election administration even though the ballots themselves remain untouched.

The risk of voter confusion concerns the conflicting messages voters receive about what they must do to register and obtain a ballot, not merely whether the revised procedures, correctly understood, would permit more voters to participate. *See Purcell*, 549 U.S. at 4-5. Revised guidance permitting their consideration in some circumstances may leave voters uncertain about which instructions govern and whether the documents they possess will suffice. That uncertainty can discourage voters from attempting to register or appearing at the polls, even if the revised procedures would ultimately allow them to vote. *Purcell* expressly recognizes this consequence: "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Id.* Those consequences, considered together with the statutory and constitutional issues addressed above, favor a stay pending appeal.

## CONCLUSION

For the reasons previously stated in Defendants' Emergency Motion and supported above, Defendants respectfully request that the Court stay the district court's injunction until the appellate process has resolved the important questions of law presented here.

Respectfully submitted,

APPELLANTS DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General

By their attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date: October 10, 2026

*/s/ Michael P. DeGrandis*

Anthony J. Galdieri, Bar No. 1175480
New Hampshire Solicitor General
Michael P. DeGrandis, Bar No. 1218329
Assistant Attorney General
anthony.j.galdieri@doj.nh.gov
michael.p.degrandis@doj.nh.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Reply to Appellee's Response to Appellants' Renewed Emergency Motion for Stay complies with the word limit established by Federal Rule of Appellate Procedure 27(d)(2)(C) and enlarged by the Court, because the motion contains 2,594 words. This Motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared using Microsoft Word for Microsoft 365 MSO (Version 2605 Build 16.0.20026.20166) 64-bit in 14-point Times New Roman typeface.

*/s/ Michael P. DeGrandis*
Michael P. DeGrandis

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2026, I electronically filed the foregoing Reply with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. Participants in the case are represented by registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Michael P. DeGrandis*
Michael P. DeGrandis